# United States Court of Appeals
## For the First Circuit

No. 15-1334

UNITED STATES,

Appellee,

v.

YAHYAA IBRAHIM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,*
and Selya, Circuit Judge.

Judith H. Mizner, Assistant Federal Public Defender, with whom Federal Public Defender Office was on brief, for appellant.
Jennifer A. Serafyn, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

February 18, 2016

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

SOUTER, **Associate Justice**.  Yahyaa Ibrahim was indicted for failure to register as a sex offender, and he filed two motions to dismiss the indictment.  The first challenged the constitutionality of the registration requirement.  No hearing was requested and none was held for 344 days, until after the second motion requested dismissal of the charges for violation of the speedy trial requirement.  After a hearing, each was denied, and he pleaded guilty, though subject to the right to appeal the denials of his motions.  We affirm.

## I

On June 4, 2013, Ibrahim was indicted for failure to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16913, in violation of 18 U.S.C. § 2250.  On January 7, 2014 he sought leave of the district court to file an oversized brief on the ground that his forthcoming motion to dismiss the indictment raised complex issues.  His request was granted, and, on January 9, he filed the brief, which claimed that SORNA was unconstitutional (the SORNA motion).  Specifically, he contended that Congress both exceeded its Article I authority by enacting SORNA and violated the nondelegation doctrine by giving the Attorney General power to determine SORNA's applicability to pre-enactment offenders.  The first paragraph of the SORNA motion acknowledged that all of its arguments had been

rejected by panels of this court and were raised only to preserve them for further review.

The Government's opposition brief, filed on February 5, agreed that Ibrahim's arguments were foreclosed by this court's precedents. On February 7, the magistrate judge issued a status report, noting that, under the Speedy Trial Act (STA), 18 U.S.C. § 3161, seventy days remained for the case to be tried.

On December 5, Ibrahim filed a second dismissal motion, this one asserting a violation of the STA on the ground that 270 days of unexcluded time had elapsed (the STA motion).[1] The Government filed its opposition on December 16.

At a December 19 hearing, the district court denied both the SORNA motion and the STA motion. On February 13, 2015, Ibrahim entered a conditional guilty plea, reserving his right to appeal the denials of both motions. He was sentenced to time served and five years' supervised release.

**II**

The district court denied the SORNA motion because it agreed with the parties that Ibrahim's constitutional challenges had been directly rejected by panels of this court. As Ibrahim

---

[1] On Ibrahim's view, detailed below, the SORNA motion occasioned a maximum of thirty excludable days, running from the February 7 status report until Sunday, March 9. Between Monday, March 10 and the December 5 filing of the STA motion, 270 days elapsed.

says in his brief here, "he recognize[s] that panels of this [c]ourt have rejected these arguments . . . and presents them here because he believes those cases were wrongly decided and seeks to preserve the issues for possible en banc review or review by the Supreme Court."

By reference to our controlling precedents, we summarily affirm the district court's rejection of the constitutional challenges to the statute. See United States v. Whitlow, 714 F.3d 41, 44 (1st Cir. 2013) (collecting our cases rejecting arguments that, in SORNA, Congress exceeded its Article I authority and violated the nondelegation doctrine).

**III**

"This circuit reviews a denial of a statutory speedy trial claim de novo as to legal rulings, and for clear error as to factual findings." United States v. Carpenter, 781 F.3d 599, 616 (1st Cir. 2015). The STA requires that a defendant be tried within seventy days of the later of the indictment or initial appearance. See 18 U.S.C. § 3161(c)(1). In computing the seventy days, however, § 3161(h)(1)(D)[2] excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

---

[2] What is now subparagraph (D) was formerly subparagraph (F), as reflected in some of the cases cited herein.

Here, on December 19, 2014, the district court held a hearing on Ibrahim's SORNA motion. The time that by then had elapsed since January 9, when Ibrahim filed the SORNA motion, was excluded for purposes of the STA, and with this 344-day exclusion there was no STA violation.[3] Ibrahim responds with two arguments. The first is that the statutory exclusion applies only when a hearing is required, and that his SORNA motion required none. Alternatively, he says that what transpired in court on December 19 was not really a hearing on the SORNA motion. Neither argument is persuasive.

**A**

Assuming that the § 3161(h)(1)(D) exclusion is limited to instances where hearings are required, we reiterate the established principle that a district court's determination of need for a particular hearing deserves substantial deference. In United States v. Salimonu, 182 F.3d 63, 67-68 (1st Cir. 1999), after a hiatus of some two-and-half years between the filing of a motion and a hearing, the appellant contended that the trial court erred in determining that a hearing was required. The district court had specifically found that the motion was of a type for

---

[3] While we will explain that the delay between filing and hearing the SORNA motion is excludable as a matter of STA law, it is regrettable as a matter of judicial docket management. Better district court practice would have set a hearing more expeditiously.

- 5 -

which, in its view, hearings should be held and had noted its regular practice of holding hearings on them.  Id.  "This is a sufficient indication," we held, "that a hearing was required."  Id.  "[T]he district court is in a better position to determine the necessity of a hearing than we are."  Id.

In United States v. Maxwell, 351 F.3d 35 (1st Cir. 2003), we reaffirmed our deference to the district court's determination of necessity.  There, we accepted the exclusion of pre-hearing time "[e]ven though it took the court eight months to state on the record," just before the filing of an STA motion, its decision that the previously filed motion to sever required a hearing.  Id. at 39.  "Our conclusion," we stressed, "is consistent with . . . our reluctance to impugn the district court's regular, justified practices."  Id.

Our deferential position is not eccentric.  "[A]ppellate courts generally have been reluctant to question the judgment of a district court that a hearing is required."  United States v. Dunn, 345 F.3d 1285, 1294 (11th Cir. 2003) (footnote omitted) (citing, inter alia, United States v. Tannehill, 49 F.3d 1049, 1052 n.4 (5th Cir. 1995)); see also United States v. Smith, 569 F.3d 1209, 1213 (10th Cir. 2009) ("Even if the motions were weak on the merits . . . there was no abuse of discretion in the trial court's decision to have a hearing on them. . . .  Perhaps a hearing on [the] motions was not strictly speaking necessary to

- 6 -

resolve them, but we will not second-guess the trial court's decision to hold one."). Nor should these decisions engender skepticism, for they rest on both permissible construction of the statute, see Maxwell, 351 F.3d at 38, and sound concern for practicality. More searching appellate enquiry into the necessity of particular hearings would prove difficult and inevitably time consuming to administer: so much depends on the specific motion and the specific needs of the parties and district judge.

In brief, "we are loath to question the court's judgment in this area absent obvious subterfuge." Salimonu, 182 F.3d at 68. This "obvious subterfuge" limitation on our deference is shorthand for our stated refusal to "permit either the district court or the prosecution to jerry-build a 'hearing' in order to thwart the concinnous operation of the Speedy Trial Act." Id. at 68 n.1 (quoting United States v. Staula, 80 F.3d 596, 602 n.3 (1st Cir. 1996)); see also Maxwell, 351 F.3d at 39 (same). But we do not see that here. The district court noted that "[i]t is my regular practice to have hearings on motions to dismiss in criminal cases, and, if possible, decide them orally and then schedule either a trial or a plea." And the advisability of departing from standard practice did not appear compelling; Ibrahim, after all, represented to the trial court that the SORNA motion presented complex issues requiring an oversized brief. So we cannot say that the district court engaged in obvious subterfuge, and we defer

to its determination that a hearing on the SORNA motion was required.

**B**

Ibrahim also argues that while the December 19, 2014 court session aired his STA motion, it did not function as a hearing on the SORNA motion; and without a hearing on the SORNA motion to trigger § 3161(h)(1)(D)'s time-exclusion, the motion could, at most, have deserved § 3161(h)(1)(H)'s thirty-day exclusion. See 18 U.S.C. § 3161(h)(1)(H) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").[4] Excluding only thirty days would not, of course, render Ibrahim's proceedings compliant with the STA.

The STA does not define the word "hearing." But we have understood it capaciously as "any on-the-record colloquy in which the district court hears the arguments of counsel and considers those arguments prior to deciding a pending motion." United States v. Barnes, 159 F.3d 4, 12 (1st Cir. 1998) (quoting Staula, 80 F.3d at 602). A hearing is "marked by oral argument, factual findings, or legal rulings." Id.

---

[4] What is now subparagraph (H) was formerly subparagraph (J).

Here, the district court began the on-the-record colloquy by saying, "We're here in connection with the hearing I scheduled on the two motions to dismiss, one on constitutional grounds, one on Speedy Trial Act grounds. They're intertwined." It went on to say, "I'm prepared to hear about the merits of both the motions and explain why, even though you acknowledge the First Circuit has decided your constitutional issues, I really would have had a hearing in any event, and I'll explain it in detail." During defense counsel's remarks on the STA motion, the court repeated, "I want to give you a chance to address the merits of your underlying motion," and later asked defense counsel, "Is there any more you'd like to say on the underlying constitutional motion?" Counsel responded that she hoped her oversized brief was sufficient, but reported that she had researched the case law in advance of the hearing and confirmed that the state of the law as represented in her brief had not changed.

Turning to the other side, the district court heard from the Government on the SORNA motion when the prosecutor explained that "no one disputes that these [constitutional] issues have been decided by the First Circuit." Finally, the district court, on the record, ruled, "The motion to dismiss based on constitutional grounds is hereby denied."

In sum, the December 19 event included an "on-the-record colloquy" in which the district court invited any further arguments

of counsel for consideration before deciding the pending SORNA motion by issuing a "legal ruling[]." Id. Contrary to Ibrahim's protests, the character of the event was not qualitatively altered simply because the Government was not asked any direct questions about the SORNA motion, or because the district court indicated that, had it not been burdened by STA constraints, it might have made a written disposition of the constitutional issues.[5]

**IV**

The judgment of the district court is AFFIRMED.

---

[5] Although the district court denied the STA motion, it stated that, if it were to grant the motion, it would do so without prejudice to reprosecution. Because we affirm the denial of the motion, we need not reach Ibrahim's claim that a grant should have been with prejudice.